Plaintiffs, Jimmy R. Hope and Susan L. Hope, appeal from a summary judgment for defendants James B. Brannan, Jr., Jane LeCroy Brannan, William F. Davis, and Bear, Davis Copeland, in the Hopes' action based upon alleged fraud in the sale of a used dwelling. We affirm.
In early May 1988, the Hopes decided to purchase a 58-year-old residence owned by the Brannans in Montgomery. William F. Davis, an agent of Bear, Davis Copeland (a real estate firm), had shown the Hopes the Brannans' house.
The Hopes attempted to secure financing, and an appraisal was performed pursuant to the lender's instructions. After inspection, the appraiser determined that the Brannans should make about $200 worth of minor repairs.
After negotiations, including several offers and counteroffers, the Hopes decided to forgo financing and reached an agreement with the Brannans on June 30, 1988. The contract ultimately agreed upon contained the following "as is" clause:
 "No oral statement, representation, promise or inducement shall have any validity or effect nor shall be a part of *Page 1210 
this agreement unless specifically written in the agreement. Salesperson and listing agent do not warrant or guarantee, either express or implied, this property, any of the equipment or appliances contained therein, any improvements thereon, the lot or house size or dimensions, the age or square footage of the house, any of the systems used on the property including but not limited to electrical and those used to heat or cool the house, sewer or septic tank availability or condition, or plumbing but to the contrary, the Purchaser represents to the salespersons and the listing agents that Purchaser has personally inspected the premises to their satisfaction and rely solely thereon. Furthermore, Purchaser has inspected the property and improvements without relying on any representation or warranty or any printed or written description of the property and improvements from Seller or any sales person or listing agent. The real estate agents only act to bring the parties together and are not liable to either party for performance or nonperformance of the terms and obligations of this agreement." (Emphasis added.)
The contract also contained the language "Purchaser to pay for any repairs."
The first time the Hopes met or spoke with the Brannans was at the closing on July 6, 1988. At the closing, the Hopes received a "termite bond" and a "termite letter" that evidenced prior termite treatment.
The Hopes claim that on their visit before purchasing the house, they inquired of Davis about the age and condition of the roof, the plumbing, and the wiring and whether there were termites in the house. The Hopes contend that Davis stated that the roof was two years old, that the plumbing and wiring were recent, and that there were no termites. The Hopes claim that, based upon these representations, they purchased the house without further inspection.
After moving into the house, the Hopes discovered a number of problems. Those problems included, among other things, that certain windows were broken; that the trim around the house was rotten; that there were live termites; that, although the front roof was two years old, the rear roof was not less than 15 years old; and that the master bedroom closet was damaged.
On August 18, 1988, the Hopes sued the Brannans; Davis; and Bear, Davis Copeland, alleging false and fraudulent misrepresentation; fraud by suppression of information, constituting willful deceit; fraud by mistake; and fraud by misrepresentation. The Hopes' complaint also alleged against defendants Davis and Bear, Davis Copeland a civil conspiracy to induce the purchase and negligence in failing to investigate the property before making representations about its condition.
In reviewing the summary judgment, we note that this case was filed after June 11, 1987; therefore, the "substantial evidence rule" is the applicable standard of review in this case. The "scintilla rule" was abolished by the legislature as to cases filed after June 11, 1987. Ala. Code 1975, § 12-21-12. The act abolishing the scintilla rule does nothing to change the procedure for handling the burden of going forward with the evidence. Therefore, if the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden of going forward with the evidence still shifts to the nonmovant; however, that burden is now greater than it was in the past, because the nonmovant must show "substantial evidence" in support of his position. Bass v. SouthTrust Bankof Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989).
In the resale of used residential real estate, there is no implied warranty of habitability. This state has retained the longstanding doctrine of caveat emptor with regard to the sale of used residences. Sanders v. White, 476 So.2d 84 (Ala. 1985);Cooper Co., Inc. v. Bryant, 440 So.2d 1016 (Ala. 1983). The only abrogation of the doctrine of caveat emptor has been in the sale of new residences. Cochran v. Keeton, 287 Ala. 439,252 So.2d 313 (1971). Also, a purchaser may protect himself by express agreement in the contract of sale. *Page 1211 Ray v. Montgomery, 399 So.2d 230 (Ala. 1980).
With ordinary diligence, the Hopes could have discovered any problems with the house. The Brannans did not prevent the Hopes from inspecting the house before it was sold. The Hopes had ample opportunity to inspect for any damage, and their failure to inspect negates a finding of actionable fraud under these facts. Ray v. Montgomery, supra; Marshall v. Crocker,387 So.2d 176 (Ala. 1980).
Moreover, the record indicates that the Hopes were not novices to real estate transactions. In fact, Mr. Hope had a real estate license. The Hopes' failure to inspect the house before purchasing it cannot insulate them from the application of the doctrine of the caveat emptor; therefore, the maximvolenti non fit injuria applies.
The Hopes also argue that an "as is" clause cannot defeat the duty imposed by an inquiry like that dealt with in FennellRealty Co. v. Martin, 529 So.2d 1003 (Ala. 1988). However, in the facts of this case, the Hopes cannot overcome their neglect in failing to inspect the house by showing a reliance onFennell. In Fennell we held:
 "Although Alabama retains the caveat emptor rule with regard to the resale of used residential real estate (Ray v. Montgomery, 399 So.2d 230 (Ala. 1980)), it is not applicable, under certain circumstances, when the purchaser of a used house inquires directly (either of the seller or of the seller's agent), prior to closing, about a material defect or condition of the home. If the agent is questioned directly, and the agent assumes the obligation to inspect the house for the defects inquired about and to disclose his findings to the buyer, the law imposes on the agent the duty of truthful disclosure of all material facts revealed by the inspection. Ray v. Montgomery, supra; Marshall v. Crocker, 387 So.2d 176 (Ala. 1980), citing Jordan Sons v. Pickett, 78 Ala. 331
(1884); and Ala. Code 1975, § 6-5-102.
 "Moreover, if the agent (whether of the buyer or of the seller) has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent is under a duty to disclose the defect and is liable for damages caused by nondisclosure. This duty is also placed on the seller. See Cashion v. Ahmadi, 345 So.2d 268, 270
(Ala. 1977)."
529 So.2d at 1005.
The record reveals that the Hopes inquired of Davis about the age and condition of the roof, the plumbing, the wiring, and whether there were termites. Davis responded to the Hopes' inquiries with the information supplied by the Brannans and did not assume any obligation to inspect the house personally. Because Davis did not undertake any obligation to inspect the house and because the Hopes neglected to inspect the house themselves, they cannot take advantage of the holding inFennell.
Moreover, neither Davis nor Bear, Davis Copeland can be held liable in fraud for merely relaying statements about the condition of the house. In Speigner v. Howard, 502 So.2d 367
(Ala. 1987), this Court addressed the question of whether one who relays information, unaware that it is false, can be held liable in fraud:
 "It is clear that Ms. Howard [agent] had no personal knowledge of the condition of the roof. Her only information concerning the roof came from the seller, Mrs. Minor, whose statements concerning the roof were simply relayed to Ms. Howard. Ms. Howard then relayed the information to Ms. Chambers, who, in turn, relayed it to the Speigners. No one questions the accuracy of Ms. Howard's own statements, and, therefore, her statements were not, as made by her, misrepresentations. Consequently, neither Ms. Howard, nor her employer, Lowder, can be held liable in fraud for merely conveying the statements of their principal to the agent of the Speigners, there being no evidence of bad faith on her part. Estes v. Crosby, 171 Wis. 73, 175 N.W. 933, 8 A.L.R. 1377 (1920). And *Page 1212 
see Sealy v. McElroy, 288 Ala. 93, 257 So.2d 340
(1972)."
402 So.2d at 370-71 (emphasis on "merely" original; other emphasis added). See also Miller v. Sexton, 549 So.2d 10 (Ala. 1989).
The substance of the Hopes' inquiry to Davis in this case related to the age and condition of the roof, wiring, and plumbing and to the presence of termites. Davis allegedly told the Hopes that the roof was two years old, that the plumbing and wiring were recent, and that there were no termites. The Hopes claim that, based on those alleged representations, they purchased the house without further inspection.
As in Speigner, it is apparent that the agent in this case acted as a mere conduit through which information was supplied by the sellers. In light of our holding in Speigner and Miller, Davis and his employer cannot be held liable for fraud or for negligence.
The doctrine of caveat emptor has been a longstanding rule in this state. Although we empathize with the Hopes, we are not inclined in this case to depart from such a longstanding rule. Under the facts of this case, the trial court correctly entered summary judgment.
The Hopes also argue that the trial court abused its discretion in not allowing them to take the depositions of the parties and of two nonparty witnesses. Prior to the filing of the motions for summary judgment, the parties had conducted extensive discovery, including interrogatories, requests for admissions, and requests for production. The depositions of the plaintiffs, the defendants, an FHA appraiser, and several other non-party witnesses had also been scheduled.
The record reveals, however, that at the hearing on the defendants' motions for summary judgment the parties agreed that the depositions that had been scheduled would be cancelled, presumably because the depositions would be an unnecessary expense and because the facts could be presented by way of affidavits. Moreover, if summary judgment were denied, the depositions could be rescheduled.
Prior to the trial court's ruling on the motion for summary judgment, the Hopes filed a motion seeking an order allowing them to conduct limited discovery and to take the depositions of two nonparty witnesses. The two nonparty witnesses were the FHA appraiser and a representative from the lending institution from which the Hopes originally had attempted to obtain financing. The trial court, in its order, found:
 "Accordingly, the Court exercises its discretion and is of the opinion that no useful purpose will be served by prolonging discovery activities by further discovery activities or submission of further affidavits and therefore finds that the Motion to Allow Plaintiffs to Conduct Limited Discovery, etc., by depositions from two non-party witnesses and the Motion to Extend Time for filing of further affidavits, additional investigation, etc., are due to be denied.
 "In reaching the foregoing findings and opinions the court has given substantive consideration to any portions of said affidavit filed on behalf of the plaintiffs constituting evidence which would be admissible in the trial of this cause and has disregarded any portions thereof constituting evidence which would be inadmissible at the trial of this cause."
The Hopes essentially argue that because the trial judge did not permit the taking of any depositions, they were prevented from adequately presenting their case.
The mere pendency of discovery does not bar summary judgment.Reeves v. Porter, 521 So.2d 963 (Ala. 1988). However, if it can be ascertained that discovery is crucial to the nonmoving party's case, then it is error for the trial court to enter a summary judgment before the discovery has been completed.Reeves, supra; Noble v. McManus, 504 So.2d 248 (Ala. 1987);Parrish v. Board of Commissioners of Alabama State Bar,533 F.2d 942 (5th Cir. 1987).
However, the burden of showing that the discovery is crucial is upon the nonmoving party. The nonmoving party can do so by complying with Rule 56(f), *Page 1213 
Ala.R.Civ.P. Water View Developments, Inc. v. Eureka, Inc.,512 So.2d 916 (Ala. 1987). Rule 56(f) allows a party who has no specific material contradicting his opponent's presentation to survive a summary judgment motion if he presents valid reasons justifying his failure of proof. Rule 56(f) provides:
 "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
A party seeking the shelter of Rule 56(f) must offer an affidavit explaining to the court why he is unable to make the substantive response required by Rule 56(e). If no crucial evidence would be supplied by the discovery, it is not error for the trial court to enter summary judgment with discovery pending. Reeves, supra.
The Hopes argue that the trial court abused its discretion in not allowing them to take the depositions of the parties and two nonparty witnesses. However, the parties agreed that the depositions would be cancelled and that the facts could be presented by way of affidavits. To the extent that the parties agreed to submit affidavits, the Hopes have waived their right to argue that issue on appeal. Moreover, with respect to the two nonparty witnesses, the trial court found that the depositions were not crucial to the nonmoving party's case.
Based on the foregoing, we cannot say that the trial court committed reversible error by granting the motions for summary judgment.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.